May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner, Sohansin Pandare. Could you adjust the mic up just a little bit? We're having trouble hearing you. When the board rendered its decision, its February 26, 2004 decision in this case, it reversed the immigration judge's adverse credibility finding. And it accepted as true the petitioner's occasion for four months, beaten virtually every other day during that four-month period. Beaten so severely that following his release, he was unable to walk for a two-year period. It also accepted as true his testimony that his brother had been arrested with him, tortured, and subsequently murdered by the police. It then concluded as a legal matter that he'd established past persecution and recognized that the burden of proof, therefore, shifted to the government to demonstrate that the conditions in India had changed so dramatically that this individual no longer had a well-founded fear. Not just generally, but they had to prove that this particular individual no longer has a well-founded fear of persecution. Now, the board found that the government had met that burden, and in doing so, it focuses on a report that was issued in 1997 that talks about decreasing violence against Sikhs in Punjab. The problem with the board's analysis in this case is that the petitioner in this case was summoned by the senior superintendent of police to the police station in September 1997 and was expressly, specifically threatened that he would be killed, as other Sikhs had been killed, if he did not withdraw the complaint that he had filed against a high-ranking police officer regarding his brother's death. The 1996 report predates that September 1997 threat. There's just simply no way that evidence from 1996 and early 1997 general evidence about country conditions can possibly rebut the specific evidence that the petitioner presented and that the board found credible that he himself was expressly threatened with death in September 1997. Based on that, he's now in a position where he can't be held accountable for his actions. Now, I'm wondering what we're supposed to do about it after Ventura. It looks pretty clear. You know, we read an enormous number of these country reports from year to year, plus thousands of pages of press clippings. It looks like the troubles have trailed off. You're talking about a decade ago. And if we sent it back and they reopened it, they would probably look at subsequent country reports. Do we have to just, if we accept everything that your argument gives us, do we have to just say, grant him asylum, or do we remand it and leave it wide open so that they can consider subsequent country condition changes? Well, I think you'd have to reverse the board's conclusion that the government met its burden of proof and remand for the board to exercise its ultimate discretion. Now, when the case goes back, presumably the government could make a motion to the board asking them to reopen on the grounds that conditions have dramatically changed. But that would be the government's burden at that point. So it's the government's burden then to reopen and put in more country reports. They would have to request that of the board, yes. So you're suggesting what we ought to do is what we did in Qatari, right? That's right. Yes. And then if you were Qatari, I think, predated Ventura. Well, it did predate Ventura. But when the government has already had an opportunity to put on changed country conditions and the BIA's rule on it, is a true Ventura remand appropriate, do you think? Well, it's true that prior to Ventura, the circuit's view was that the government shouldn't get two bites at the apple. Now, in light of Ventura, it's less clear. I mean, Ventura does specifically say that one of the purposes of remand is to allow the government an opportunity to present additional evidence regarding country conditions. And it's our view that the government certainly could make a motion when the case goes back on remand. All right. But the motion to reopen that we filed, if the Court takes that approach and reverses the board's 2004 decision, it's our view that the subsequent motion to reopen that we filed would be, in effect, removed. There's an issue presented in that motion, obviously, about whether the board applied a correct or incorrect standard. And it's our view that the board obviously applied an incorrect standard. But because this is a single-member disposition, it's an unpublished disposition, and it involves a question of law that's quite interesting and, I think, intricate. And the board's decision in this case, I think, is an aberration, because it's inconsistent what we normally see, because here they're asking us not only to prove that the evidence that we're presenting was previously unavailable, could not have been discovered or presented for the original IJ hearing, they're asking us to present affirmative evidence of a material change. We think that's an aberration, but we also think it's not necessarily for the Court to decide that. Under Ventura, because the board hasn't published any law on this, talking about how to reconcile the statute relating to motions to reopen with the statutory provision saying you can only apply for asylum once, absent changed country conditions, the appropriate thing, if you get to that point in the case, would be to remand this case to the board so that the board could address that in a published opinion in the first instance.  This week, Your Honor, but not with regard to asylum. I'll reserve the balance of my time. Ms. Drucker? Yes, Your Honors. In this case, the BIA did not err in finding a rebuttal of the presumption of well-founded fear, in finding that the past persecution was not as atrocious as the matter of Chen, and in denying the motion to reopen for not meeting the requirement of material and not previously available. I'd like to address first this rebuttal of presumption of well-founded fear. If I might, let me ask you about Qataria, the case in Qataria. We specifically considered the 1996 country reports in Qataria and found in Qataria that they were insufficient to rebut. Does that have the 1997 addendum as well, Your Honor? Because both were in the record in this case, as exhibit, in Exhibit 4. And I think What difference do you think that makes? Oh, I think it makes a tremendous amount of difference, and if you'll give me just a moment, I'll explain why. Do you mind? Well, go ahead. This is a very unusual situation in that the Department of State reports so, so specifically address the exact claim that the Petitioner is making. That's a rare thing in my experience. If you look at Petitioner's affidavit at 850 and 851 of the record, he talks about he's looking for his brother, Ranjit, who's disappeared. And he says he went to an office. They provided me with a register containing descriptions of dead bodies and some photos of Sikhs who were cremated as unclaimed. I picked up the photo of my brother. He was cremated by Ashok Kumar, a policeman. And then it talks about how he was going to participate in an inquiry about what happened. Okay. Now, let me now turn to the addendum, which was within Exhibit 4. I'm looking at page 829 of the record. Let me just read a little bit of this. I think this is an amazingly close relationship and more than satisfies this circuit's requirement for an individualized analysis. The next sentence says, Despite these developments, the investigation of deaths at the hands of the police has at best been a slow process. That's correct, it does. Again, these reports, sometimes the Lord giveth and the Lord taketh away. But this is still constituting substantial evidence in the record. Counsel, it's not just the report. It's the logic of the thing. The central government may well be trying to prevent the Punjabi police abuses, but the Punjabi police may be taking care of their own and continuing the abuses and trying to defy the government. Aren't both logically possible and even highly likely? That may be true, Your Honor, but again, I think that this constitutes substantial evidence which would require the Court to support the findings of the BIA. But the problem I have with your argument on that is that the BIA didn't rely on that passage. It just relied on the general entry reports, as did the BIA in Qataria. And they said, well, it's getting better. They didn't say they didn't make an individualized analysis. Now, you've made an individualized analysis argument here, but can you point to me where the BIA conducted that required analysis? The BIA hasn't said that, but I think, as Judge Kleinfeld was saying before, that the substantial evidence is on the record as a whole, and this certainly is in the record. Another factor here also is if you look at something that happened to Petitioner in 1990, he was threatened. You can't point to that in the record where the BIA did the required individualized analysis based on the country reports, right? I think, you know, I think that the words of the BIA appear, you know, in its decision, and I don't think that they, you know, are that specific. And you're right. They don't quote the portion that I just read. That's true. Thank you. As I was saying, another factor has to do with 1990. At that time, Petitioner also was threatened with death by the police if he continued his political activities. That's at page 742 of the record. But he continued for two and a half years politically active, and this threat was never carried out. I think that's also substantial evidence that supports the board here. Now, the denial of the motion to reopen is somewhat more problematic. Certainly the second board decision, I think that's the one in June 2004, is not perfect. However, the board did correctly cite the standard of material and not previously available at the beginning of the second paragraph. And they also spoke of the absence of meaningfully changed circumstances and arguments that should have been made in the context of the original appeal. Now, we think that their decision in that regard was correct. If the court disagrees, I don't think we would oppose a remand to try to modify the discussion of the board in this decision. However, why we think it's correct is as follows. There were two types of evidence that were attached to the motion to reopen. One was background evidence, and the other were affidavits about the police visiting the Petitioner's home. The background really didn't relate specifically to Petitioner in the same way that that Department of State section that I read does, particularly because Petitioner admitted that he had not been active in any political party after his arrest in 1992. That's at page 788 of the administrative record. Now, turning to the business about the affidavits about the police visiting his home, Petitioner conceded in his brief to this court, that's at page 34, note 18, that the visits might have happened during the time that he was in the immigration hearing. And then if you go and you look at the administrative record and the documents attached to the motion to reopen, his own affidavit says his family gave him information, quote, in general terms, unquote, about this. And his affidavit doesn't specify the dates involved. That's page 36 of the record. So our position is that Petitioner did not carry his burden, and it was his burden, of showing that this evidence was not available, excuse me, yeah, not available at the time of the hearing. Any further questions? Okay. Thank you, counsel. Thank you, Your Honor. Just very briefly, going back to the addendum, if you look at page 830, this is one, two, three, four, fifth paragraph down, the one that begins, individual Sikhs may be mistreated from time to time, but no more than our other Indians. The very next sentence says, custodial abuse and other police abuses remain a significant problem, despite efforts to eliminate these practices. Given that statement, that police abuses remain a significant problem, and the fact that the board credited this man's testimony, that in September, two months after this report was issued, he was specifically threatened with death, there's just no way that any reasonable fact finder could conclude that the government had met its burden. Thank you. Thank you. Cases here will be submitted, and we will take a 20-minute morning recess. If you want to make it shorter, Judge Thomas, I can handle that. All right. We'll just take a recess for 10 minutes, then. All rise. The court stands to recess for 10 minutes.
judges: Kleinfeld, Thomas, Leighton